

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTINA MARY REYNOLDS, on behalf of
herself and all others similarly situated,

                Plaintiff,

      v.

CHESAPEAKE & DELAWARE BREWING
HOLDINGS, LLC; CHESAPEAKE &
DELAWARE BREWING PENNSYLVANIA
HOLDINGS, LLC; IRON HILL BREWERY,
LLC;  KEVIN FINN, MARK EDELSON,
KEVIN DAVIES, and DOE DEFENDANTS 1-
10.

                Defendants.

Civil Action No.: 19-2184

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

FILED

MAY 20 2019

KATE BARKMAN, Clerk
By _____ Dep. Clerk

Plaintiff Christina Mary Reynolds ("Plaintiff")[1], on behalf of herself and all others

similarly situated, alleges as follows:

## INTRODUCTION

1.      This is a class and collective action brought on behalf of "Tipped Employees"

who work or have worked at restaurants operating under the trade name Iron Hill Brewery &

Restaurant ("Iron Hill Restaurant") that are owned, operated and/or otherwise managed or

controlled by Defendants Chesapeake & Delaware[2] Brewing Holdings, LLC ("C&D Brewing"),

Chesapeake & Delaware Brewing Pennsylvania Holdings, LLC ("C&D Brewing PA"), Iron Hill

Brewery LLC ("IHB"), Kevin Finn ("Finn"), Mark Edelson ("Edelson"), Kevin Davies

---

[1] Plaintiff has also gone by her previous married named of "Christina Mary Bello."  However, Plaintiff
has returned to using her maiden name of "Reynolds" again.

[2] "Chesapeake & Delaware" shall be referred to as "C&D."

MAY 20 2019

("Davies"), (collectively, "Defendants") and have been subject to the unlawful practices detailed herein.

2.    Upon information and belief, Defendants own and/or otherwise control at least 16 entities operating as Iron Hill restaurants, including: C&D Brewing Company of PA, LLC ("West Chester"), C&D Brewing Company of Ardmore, LLC ("Ardmore"), Iron Hill Hershey, LLC ("Hershey"), Iron Hill Brewery East Market, LLC ("Philadelphia"), C&D Brewing Company of Lancaster, LLC ("Lancaster"), C&D Brewing Company of Montgomeryville, LLC ("North Wales"), C&D Brewing Company of Chestnut Hill, LLC ("Chestnut Hill"), C&D Brewing Company of Huntingdon Valley, LLC ("Huntingdon Valley"), C&D Brewing Company of Phoenixville, LLC ("Phoenixville"), C&D Brewing Company of Media, LLC ("Media"), C&D Brewing Company of Marlton, LLC ("Maple Shade"), C&D Brewing Company of Voorhees, LLC ("Voorhees"), C&D Brewing Company of Wilmington, LLC ("Wilmington"), Iron Hill Brewery of Rehoboth Beach, LLC ("Rehoboth Beach") and Iron Hill Brewery of South Carolina, LLC ("Greenville") (collectively the "Iron Hill Entities"[3]).[4]

3.    As detailed below, upon information and belief, each of the Iron Hill entities operated by Defendants maintain common ownership and share the same employment policies, including those relating to the compensation of Tipped Employees.

4.    As such, upon information and belief, the employment practices complained of herein were applicable to all Tipped Employees employed at Iron Hill, as Defendants utilized common labor policies and practices at the Iron Hill Entities.  Accordingly, Defendants are responsible for the employment practices complained of herein.

---

[3] The Iron Hill Entities also includes the Iron Hill Restaurant owned and/or controlled by Defendants located in Newark, DE.

[4] Plaintiff will seek leave to amend this Complaint if it is determined that each of the Iron Hill Entities are deemed necessary parties.

5.      Iron Hill is a restaurant chain that, according to the Company's website, operates sixteen restaurants spread across four states. *See* https://www.ironhillbrewery.com/locations (last visited April 1, 2019). These include ten (10) restaurants in Pennsylvania ("West Chester," "Ardmore," "Hershey," "North Wales," "Philadelphia," "Lancaster," "Chestnut Hill," "Huntingdon Valley," "Media" and "Phoenixville"), two restaurants in New Jersey ("Maple Shade" and "Voorhees"), three locations in Delaware ("Newark," "Rehoboth Beach" and "Wilmington") and one restaurant in South Carolina ("Greenville").

6.      Defendants employ individuals in a tipped capacity, namely "servers" ("waiters and "waitresses") and "server assistants" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices. As Tipped Employees, these individuals were primarily responsible operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

7.      As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Wage Payment and Collection Law, 43 Pa. S. § 260.1, *et seq.,* ("WPCL")[5] by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

8.      Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit" as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and

---

[5] The PMWA and WPCL are collectively referred to herein as the "PA State Laws."

3

current and former Tipped Employees. The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

9.    In addition, Defendants violated the PMWA and WPCL when they required Plaintiff and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as after the restaurant had closed or when a Tipped Employee was "cut" for the day (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work).[6] This is in contravention of applicable Pennsylvania state law.

10.    Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes but is not limited to, cleaning the restaurant, cleaning the monitors, run the coffee pots thru with cleaning solutions (and then run thru with just water), polish silverware, and setting up/breaking down prep stations. Notably, much of this work was performed after the restaurant closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

11.    Despite spending significant time performing this unrelated non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

12.    As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

---

[6] Making this issue particularly egregious, upon information and belief, it appears that Defendants were aware of Pennsylvania's wage requirement that tipped employee be paid the full minimum wage for all non-tip generating work as, upon information and belief, Defendants paid employees $10 an hour for work performed before the restaurant opened to the public.

4

## SUMMARY OF CLAIMS

13.    Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act").

14.    Plaintiff brings this suit on behalf of the following similarly situated persons:

All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

15.    Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to the PA State Laws.

16.    Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

17.    The Collective Class and the PA Class are hereafter collectively referred to as the "Classes."

18.    Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

19.    In addition, Plaintiff also alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which they performed unrelated, non-tip-generating work for which Defendants failed to pay the full,

5

mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

20.    Plaintiff alleges on behalf of the PA Class that Defendants violated the PA State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.    In addition, Defendants also violated PA State Laws by failing to pay PA Class members the full minimum wage for time spent performing non-tip generating work.

## PARTIES

21.    Plaintiff Christina Mary Reynolds ("Plaintiff" or "Reynolds") is a resident of the Commonwealth of Pennsylvania, living in the Borough of North Wales, who was employed by Defendants as a "server" at their North Wales restaurant.    While employed as a Tipped Employee, Defendants failed to compensate Plaintiff properly for all hours worked.

22.    Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.  Her Consent To Sue form is attached hereto as Exhibit A.

23.    Upon information and belief Defendant C&D Brewing is limited liability company incorporated in the state of Delaware.

24.    Upon information and belief Defendant IHB is limited liability company incorporated in the state of Delaware who owns, operates or otherwise has a controlling interest in the Iron Hill Entities.[7]

25.    Upon information and belief, C&D Brewing PA is a limited liability company incorporated in the Commonwealth of Pennsylvania.  C&D Brewing PA lists its corporate address as 118 W. Market Street, Suite 300 West Chester, PA 19380.

---

[7] In a previous lawsuit filed against Iron Hill, it was stipulated as an undisputed fact that Defendant IHB owned and operated the Iron Hill Entities in operation as of January 4, 2016. *See Schaub v Chesapeake & Delaware Brewing Co.*, No. 16-cv-00756 (E.D. Pa.)(Dkt. No. 14).

26.     Defendant Kevin Finn ("Finn") is, according to the Company's website, one of the founders of Iron Hill. *See* http://jobs.jobvite.com/ironhillbrewery/job/oNyY8fwb (last visited April 2, 2019). Defendant Finn is listed as an officer of the Iron Hill Entities on their liquor license registration with the Pennsylvania Liquor Control Board. In addition, Finn was listed as the registered agent for Defendant C&D Brewing in its registration with the Delaware Department of State. In addition, Defendant Finn is listed as an "Owner" of the fictitious name "Iron Hill Brewery and Restaurant" with the Pennsylvania Department of State. Further, Defendant Finn is listed as the "Operating Partner" for many of the Iron Hill Entities on food inspection reports conducted by the Office of Public Health in the counties in which the Iron Hill Entities operate. In his capacity as an officer of the Iron Hill entities Defendant Finn exercises sufficient control over the labor policies and practices of Defendants' restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

27.     Defendant Mark Edelson ("Edelson") is, according to the Company's website, one of the founders of Iron Hill. *See* http://jobs.jobvite.com/ironhillbrewery/job/oNyY8fwb (last visited April 2, 2019). Defendant Edelson is listed as an officer of the Iron Hill Entities on their liquor license registration with the Pennsylvania Liquor Control Board. In addition, Defendant Edelson is listed as an "Owner" of the fictitious name "Iron Hill Brewery and Restaurant" with the Pennsylvania Department of State. In his capacity as an officer of the Iron Hill entities Defendant Edelson exercises sufficient control over the labor policies and practices of Defendants' restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

7

28.    Defendant Kevin Davies ("Davies") is, according to the Company's website, one of the founders of Iron Hill.  *See* http://jobs.jobvite.com/ironhillbrewery/job/oNyY8fwb (last visited April 2, 2019).  Defendant Davies is listed as an officer of the Iron Hill Entities on their liquor license registration with the Pennsylvania Liquor Control Board.  In addition, Defendant Davies is listed as an "Owner" of the fictitious name "Iron Hill Brewery and Restaurant" with the Pennsylvania Department of State.  In his capacity as an officer of the Iron Hill entities Defendant Davies exercises sufficient control over the labor policies and practices of Defendants' restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

29.    At all relevant times during the statutory period covered by this Complaint, Defendants have transacted business within the Commonwealth of Pennsylvania, including within this district.

30.    At all relevant times during the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated its restaurants under common control for a common business purpose.

31.    Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of the Iron Hill Entities in the Commonwealth of Pennsylvania and nationwide.

32.    Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing a common officer and common corporate addresses.  Each of these Defendants share the common labor policies and practices complained of herein. Indeed, upon information and belief, Defendants locations share common human resources and payroll

8

services. All of Defendants' locations share the common labor policies and practices complained of herein.

33.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants. Evidencing the interrelation and unified operation of the Iron Hill entities, many of the entities maintain the same corporate address and all have a common ownership/management structure.

34.     An example of the unified operations of the Iron Hill entities is the fact that some of the Iron Hill Entities are "members" of the limited liability company of other Iron Hill Entities. Iron Hill Hershey, LLC is listed as a member of C&D Brewing Company Of Pennsylvania, LLC, Iron Hill Brewery East Market, LLC, C&D Brewing Company Of Chestnut Hill, LLC, C&D Brewing Company Of Ardmore, LLC, C&D Brewing Company Of Montgomeryville, LLC, C&D Brewing Company Of Lancaster, LLC, C&D Brewing Company Of Media, LLC, C&D Brewing Company Of Huntingdon Valley, LLC and C&D Brewing Company Of Phoenixville, LLC. In addition, C&D Brewing Company of Pennsylvania, C&D Brewing Company Of Media, LLC and C&D Brewing Company Of Montgomeryville, LLC are listed as "Owners" of the fictitious name "Iron Hill Brewery and Restaurant" with the Pennsylvania Department of State.

35.     Further evidence of the interrelated nature of Defendants is the fact that Iron Hill maintains one website which references each location. *See* https://www.ironhillbrewery.com/ employment (last visited April 1, 2019).

36.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees

that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

37.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq.*

38.    Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

39.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

40.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

41.    The crux of the FLSA and the PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

42.    Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

43.    Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

44.     Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

45.     Defendants govern and administer each Iron Hill location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the restaurant location that a particular customer visits.

46.     For example, each of Defendants' Iron Hill locations use the brand name "Iron Hill" at their respective location, offers the same basic array of products and services to the general public, and have the same basic hours of operation. Further, all of the Iron Hill locations advertise together on the same website.

47.     Indeed, through the same website, an individual can apply to a variety of positions at Defendants' various Iron Hill restaurant locations. *See* http://jobs.jobvite.com/ironhillbrewery (last visited April 1, 2019).

48.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and practices at each of their locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

**Plaintiff's Experience Working For Defendant**

49.     As set forth above, Plaintiff was employed by Defendants as a "server" in their North Wales restaurant location in the Commonwealth of Pennsylvania. Plaintiff worked at this location from in or about January 21, 2019 through March 30, 2019.

50.     Plaintiff was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

51.    When working as a server, Plaintiff was not required to split her tips with anyone. Rather, Defendants required her to "tip out" (aka share a portion of her tips) to the "Server Assistants" who worked with her during Plaintiff's shift.

52.    Plaintiff's hourly wage rate from Defendants was $2.83 an hour. Plaintiff does not ever recall the hourly wage being raised by Defendants above $2.83 for any day worked, irrespective of the amount of tips earned or the type of work performed.

53.    Plaintiff typically worked for Defendants at the North Wales restaurant five days per week. Her usual schedule included working a double shift on Mondays and Saturdays.

54.    For her Monday shift, Plaintiff would typically arrive at 11:15am work through the lunch shift until approximately 3:30 p.m., leave for 90 minutes (assuming her last table had left), and then return for the dinner shift at 5:00 p.m. and stay until approximately 10:30 p.m. When Plaintiff worked a double shift on Saturday, she would typically arrive at work at 10:45 a.m. and work straight through until approximately 11:00 p.m.

55.    In addition, Plaintiff also typically worked the dinner shift on Wednesday night (arriving at 5:00 p.m. and typically working until 10:15 p.m.). Plaintiff also worked the lunch shift on Thursdays and Fridays. On those days, her shift typically started at 11:15 a.m. and lasted until 3:45 to 4:00 p.m., or later, depending on when her last table left.

56.    In total, she typically worked between thirty (30) and thirty-seven (37) hours per work. Although, Plaintiff would occasionally work an additional shift, or switch a shift with another server, Defendants had a policy of not permitting its Tipped Employees to work over forty hours in a week. Indeed, Plaintiff recalls being advised that Defendants do not approve shifts that would put an employee into an overtime situation.[8]

---

[8] Plaintiff believes this policy was waived in certain, limited circumstances (*e g*, when the restaurant was short-staffed due to several Tipped Employees leaving Defendants' employ).

12

57.     Plaintiff recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.

58.     Defendants typically required Plaintiff and other Tipped Employees to arrive fifteen minutes before the restaurant opened to the general public. During this time, Plaintiff and her colleagues performed non-tip generating work and generally helped prepare the restaurant for the opening lunch crowd.

59.     Defendants required Plaintiff and other Tipped Employees to stay after their last customer had left and/or the restaurant closed for the day so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business. These tasks included, among other things: running plates, putting away items, rolling silverware, dusting tables, pulling out the booths and cleaning them.

60.     Plaintiff estimates that there were usually two to two and one-half hours of closing work before an employee could leave the restaurant after being cut (e.g., ceased receiving assigned tables to wait on).

61.     Because of these significant cleaning/breakdown work, as well as the significant amount of side work Defendants required Plaintiff and other Tipped Employees to perform, Plaintiff estimates that she and other Tipped Employees spent well in excess of 20% of their time performing non-tip generating work.

62.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work or when working after the restaurant closed. Indeed, to the best of Plaintiff's knowledge, Defendants did not keep track of such time separately from Plaintiff's entries into the POS system.

63.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

## The Tip Credit Provision & Requirements

### *FLSA Requirements*

64.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

65.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[9]

66.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

67.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

68.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

---

[9] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage. That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit. Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

14

69.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

70.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

71.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

72.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

73.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

74.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[10] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

75.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns

---

[10] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

15

less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

76.    As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

77.    Further, an employer is *not* permitted to take a tip credit against its minimum wage obligations when (i) it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupation (*i.e.*, "dual jobs") or (ii) it requires its tipped employees to perform non-tipped work that, although related to the tipped employee's occupation, exceeds 20% of the employee's time worked during a workweek.

78.    As set forth herein, Defendants violated these provisions by requiring Tipped Employees to perform work that was *unrelated* to their tipped occupation (*e.g.*, by cleaning the restaurant) and only paying them the sub-minimum tip-credit wages.

79.    In addition, Defendants also violated these provisions by requiring Tipped Employees to perform non-tipped work that, *assuming arguendo* was related to their tipped occupation, exceeded 20% of their time worked in one or more individual workweeks during the period at issue.

*Pennsylvania's Requirements*

80.    Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements. *See* 43 P.S. § 333.103(d).

16

81.    Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour.  Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[11]

82.    As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

83.    In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

(1)    A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

(2)    Weekly or monthly amount reported by the employee, to the employer, of tips received.  This may consist of reports made by the employees to the employer on IRS Form 4070;

(3)    Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage.  The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

---

[11] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee. *See* 43 P.S. § 333.103(d).

(4)  Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(5)  Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

**Defendants' Failure To Comply With Applicable Wage Laws**

84.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

85.    Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees $2.83 per hour. In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

86.    The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

87.    Indeed, Plaintiff does not ever recall being notified by Defendants that it intended to take a "tip credit," nor how much that amount would be. Evincing the magnitude of Defendants' abject failure to notify Tipped Employees of their intention to take a tip credit, until recently, Plaintiff never even heard the term "tip credit."

88.    As set forth above, these acts constitute violations of the tip credit requirements and applicable wage and hour laws.

89.    Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips.

18

Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

90.    Indeed, Defendants violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiff, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as after the restaurant was closed to the public. At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

91.    Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiff and the other Tipped Employee were engaged in non-tip generating work.

92.    Indeed, Defendants regularly and frequently required Plaintiff and other Tipped Employees to perform a number of non-tipped duties *unrelated* to their tipped occupations, including *inter alia*: dusting tables; pulling out and moving booths; cleaning and wiping down the booths; sweeping and mopping the floors; cleaning the restaurant; breaking down and cleaning the server line; ensuring the general cleanliness of the front of the house; and rolling silverware.

93.    Further, Defendants regularly and frequently required Plaintiff and other Tipped Employees to perform a number of non-tipped duties *related* to their tipped occupations, including *inter alia*: preparatory and workplace maintenance; stocking and setting tables;

19

cleaning booths; stocking stations throughout the restaurant; stocking the "kids' fridge" with milk, chocolate milk, and apple juice; filling salt & pepper shakers; filling dressing containers; filling sauce containers; bussing tables; brewing coffee; and rolling silverware.

94.    Despite the applicable law, Defendants paid Plaintiff and other Tipped Employees at an hourly rate less than the full minimum wage for all hours worked, including during periods of time which Plaintiff and members of the Collective Class were performing non-tipped work.

95.    Because of the above violations, Defendants owe Plaintiff and the other Tipped Employees $4.42 for every hour they worked and were only paid $2.83 per hour.  Thus, the amounts due and owing are significant.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

96.    Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

97.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed. R. Civ. P. 23.

98.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple restaurants, there are likely well over 100 individuals in each of the Classes.

20

99.    Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

100.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

101.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)    whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)    whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)    whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

102.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes. Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

103.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and

21

burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

104.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

105.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
#### (On Behalf of the Collective Class)

106.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

107.    At all relevant times, Defendants has had gross revenues in excess of $500,000.

108.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

109.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

110.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

111.    Defendants have violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

112.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

113.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

114.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

115.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Defendants improperly took a tip credit and paid Tipped Employees at a rate well below the Pennsylvania minimum wage.

116.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

117.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

118.    Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

119.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW**
**(On Behalf of the PA Class)**

120.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

121.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

122.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

123.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

124.    Indeed, it is black letter law that an employee cannot voluntarily agree or contract to be paid less than the legal minimum wage for each hour worked. Accordingly, at a minimum, an employee must contract to be paid at least the minimum wage for each hour worked. Through the practices described above, Defendants paid Plaintiff and other Tipped Employees less than the legal minimum wage for each hour worked.

125.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

24

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the PA Class respectfully requests the Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.      Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.      Designation of Plaintiff as representative of the Collective Class and the PA Class;

D.      Designation of Plaintiff's counsel as class counsel for the Collective Class and the PA Class;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      An award of interest to Plaintiff and the members of the PA Class;

J.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by the complaint.

Dated: May 17, 2019                          Respectfully submitted,

                                             **CONNOLLY WELLS & GRAY, LLP**

                                             By: _____
                                                 Robert J. Gray (PA ID# 86251)
                                             Gerald D. Wells, III
                                             2200 Renaissance Blvd., Suite 275
                                             King of Prussia, PA 19406
                                             Telephone: 610-822-3700
                                             Facsimile: 610-822-3800
                                             Email: rgray@cwglaw.com
                                                    gwells@cwglaw.com

                                             **CARLSON LYNCH, LLP**
                                             Gary F. Lynch (PA ID# 56887)
                                             Edward W. Ciolko
                                             Matthew D. Brady
                                             1133 Penn Ave, 5th Floor
                                             Pittsburgh, PA 15222
                                             Telephone: 412-322-9243
                                             Facsimile: 412-231-0246
                                             Email: glynch@carlsonlynch.com
                                                    eciolko@carlsonlynch.com
                                                    mbrady@carlsonlynch.com

                                             *Attorneys for the Plaintiff and the*
                                             *Proposed Classes*

FILED

MAY 2 0 2019

KATE BARKMAN, Clerk
By_____ Dep. Clerk

26

# EXHIBIT A

## CONSENT TO BECOME A PARTY PLAINTIFF

1.    I, CHRISTINA REYNOLDS, consent to sue as a Plaintiff in this action, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

2.    During the applicable period, I was an employee of Defendants and was not paid properly for all hours worked.

3.    By my signature below, I hereby authorize counsel to prosecute the claims in my name and on my behalf, in this action, for Defendants' failure to pay all wages due and owing in accordance with federal law.

5/16/2019
_____
Date

Christina Reynolds
_____
Print Name

DocuSigned by

9E5448BB5A984A5
Signature