IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTINA MARY REYNOLDS,                  :        CIVIL ACTION
*on behalf of herself and all others*     :
*similarly situated*                      :        No. 19-2184
                                          :
    v.                :
                                          :
CHESAPEAKE & DELAWARE                     :
BREWING HOLDINGS, LLC, et al.             :

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                          **May 12, 2020**

Plaintiff Christina Mary Reynolds, a former server at Iron Hill Brewery and Restaurant, alleges her former employers failed to pay her (and other servers) the minimum wage because they improperly calculated her pay using a tip credit for time she spent performing untipped side work. Reynolds brings this putative collective and class action against her former employers, alleging violations of the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA). Defendants move for summary judgment on both claims. Reynolds moves for partial summary judgment on her PMWA claim and on the narrow issue of whether Defendants acted willfully under the FLSA. Because there are disputes of material fact regarding how much time Reynolds spent performing untipped side work and whether Defendants knew or recklessly disregarded their obligations under the FLSA, the Court will deny both motions.

**BACKGROUND**[1]

Defendants Chesapeake & Delaware Brewing Holdings, LLC and Iron Hill Brewery, LLC own 16 restaurants doing business as Iron Hill Brewery & Restaurant. At each restaurant, Defendants employ servers to wait on customers, take orders, deliver food, and ensure customers

---

[1] Except where specifically noted to the contrary, the facts are undisputed.

enjoy their dining experience. Defendants consider servers to be front-of-house employees who receive tips directly from customers.

Servers clock in and out of their shifts using Defendants' Aloha time clock system. In the Aloha system, there is a job code for servers. Employees who clock in under the server job code are paid an hourly rate of $2.83 per hour in Pennsylvania, less than the minimum wage of $7.25 per hour. Defendants then use a tip credit to make up the difference between the $2.83 hourly wage and the $7.25 minimum wage.[2] The tips servers receive directly from customers are thus applied to their wages to ensure they are paid at least minimum wage.

In addition to serving customers, servers at Iron Hill are required to perform "side work." Servers are expected to perform side work during their shifts and are trained on how to complete side work tasks, including, but not limited to, cleaning, filling condiments and dressings, rolling silverware, bussing tables, refilling napkins and other products, preparing dressings and sauces, and running dishes. These tasks are disbursed amongst the working servers on each shift. The type of side work servers perform varies based on a particular shift. Defendants use "side work books" to list the tasks servers must collectively complete at each location, designated by day, shift, and section of the restaurant.

Although all servers are required to perform side work, Defendants do not track servers' individual side work responsibilities. As a result, there is no record of what side work tasks were assigned to which servers, or how long a server spent performing the assigned tasks. Even though

---

[2] Defendants dispute this fact. *See* Defs.' Resp. to Pl.'s Statement of Material Facts ¶ 29. However, their corporate designees testified both that servers clock in under the server job code and that Defendants use a tip credit to pay those clocked in under the server job code. Pl.'s Ex. B, Cooper Dep. 26:17–26:24, 30:5–30:11, 49:16–50:1; Pl.'s Ex. C, Arnold Dep. 38:3–38:6.

side work is not on its own directed toward generating customer tips, Defendants consider all server duties, including side work, to be tipped work.

Reynolds was employed as a server at the Iron Hill restaurant in North Wales, Pennsylvania from January 17 until March 30, 2019. Reynolds spent 10 days training as a server and was paid $7.25 per hour during this period. On February 8, 2019, Reynolds began working as a server and was paid $2.83 per hour plus tips.

Reynolds testified that throughout her tenure at Iron Hill, she was required to complete excessive amounts of side work.[3] According to Reynolds, when working the opening shift, she was required to clock in before the restaurant opened and complete side work before she was assigned a table. During these shifts, Reynolds completed side work from the time she clocked in until approximately 15 minutes after the restaurant opened while she waited to receive her first table assignment. Without a table assignment, Reynolds had no ability to earn a tip during this time. There were also times in the middle of her shifts when she did not have any table assignments. During these "lulls," Reynolds was required to complete side work tasks.

At a certain point in her closing shifts, Reynolds would get "cut" and would no longer receive new tables. Defs.' App. A26–A27. Once Reynolds was cut, she would finish serving her assigned tables and perform side work. Reynolds contends she was often cut approximately two or three hours before she clocked out for her shift. When working a closing shift, Reynolds was required to complete side work after the restaurant was closed and she was no longer assigned a table. As a result, she had no ability to earn a tip during this time. Regardless of the amount of time

---

[3] The parties dispute the amount of time Reynolds spent performing side work.

3

Reynolds spent performing side work during her shifts, she was paid $2.83 per hour for every hour she worked while clocked in as a server.[4]

On May 20, 2019, Reynolds filed a putative collective and class action Complaint, alleging Defendants violated the FLSA by paying her less than minimum wage for hours she spent performing untipped side work. She asserts an identical claim under the PMWA. Defendants move for summary judgment on both of Reynolds's claims. Reynolds moves for partial summary judgment on her PMWA claim and the narrow issue of whether Defendants acted willfully under the FLSA. The Court heard oral argument on the motions on April 2, 2020.

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment if "there is no genuine issue as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court must "view all facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). If, viewing the facts in this light, a reasonable jury could find for the nonmovant, then summary judgment must be denied. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 317 (3d Cir. 2014). A court must

---

[4] Although Reynolds testified she spent excessive amounts of time completing side work, there is no record evidence of exactly how much time she spent doing this work. Defendants have provided a time sheet for Reynolds, which shows that, in the aggregate, the time she spent at work between closing out her final check and clocking out constituted only 13% of her total time at Iron Hill, suggesting that she at most spent 13% of her time doing closing side work. However, there is no record of the amount of time Reynolds spent at work between clocking in and receiving her first table, another timeframe when Reynolds alleges she performed side work. There is also no record of the time Reynolds spent doing side work in between serving tables.

thus look to the elements of the underlying claim to determine whether factual disputes are material. *See Forrest*, 930 F.3d at 105.

Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration omitted) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)).

Although the parties offer competing legal interpretations, the Court concludes that under both the FLSA and the PMWA, an employer may not pay a tipped employee using a tip credit for time spent performing related untipped duties if the employee spends more than 20% of her time performing those duties. Whether Reynolds can succeed on her claims thus depends on the amount of time she spent performing untipped side work during each workweek. This fact is disputed. Because there is evidence in the record from which a reasonable jury could find Reynolds spent more than 20% of her time performing untipped side work, the Court will deny Defendants' motion for summary judgment. Because a reasonable jury could also find the opposite on this fact and because there is also a genuine factual dispute on the issue of Defendant's willfulness, the Court will also deny Reynolds's motion for partial summary judgment.

I.      Defendants' Motion for Summary Judgment

The FLSA allows employees to bring a private cause of action against their employers for unpaid minimum wages. *See* 29 U.S.C. §§ 216(b), 206(a). To bring an FLSA claim, an employee must show that she performed work for which she was not properly compensated. *See Rosano v. Twp. of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014). The FLSA requires employers to pay

employees a minimum hourly wage for hours worked in a workweek, currently $7.25 per hour, unless an exception applies. *See* 29 U.S.C. § 206(a)(1).

One exception is the wage paid to tipped employees, known as the tip credit. Pursuant to 29 U.S.C. § 203(m), employers may pay their tipped employees less in wages ($2.13 per hour) and take a credit for tips actually received by the employees to make up the difference between the lesser hourly wage and the minimum wage. *See* § 203(m)(2)(A). To take this tip credit, the employees must be "tipped employees" within the meaning of the statute. Section 203(t) defines a tipped employee as one who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."

In this case, the parties do not dispute that Reynolds was engaged in a tipped occupation during the hours in which she served customers and received tips based on her service. The issue is whether Reynolds was also "engaged" in that tipped occupation during the time Defendants required her to perform side work that did not directly result in a tip. Based on the best and most reasonable interpretation of the applicable Department of Labor regulation, the Court concludes Reynolds was not engaged in a tipped occupation when performing untipped side work during any workweek in which she spent more than 20% of her time performing such untipped side work. Therefore, to the extent that Reynolds spent more than 20% of her time performing untipped side work in a workweek, Defendants were not entitled to take a tip credit for any of the hours Reynolds spent performing side work.

Because the phrase "engaged in an occupation" in the FLSA's definition of a tipped employee is ambiguous, courts have turned to the regulation promulgated by the Department of

Labor regarding this definition for guidance.[5] *See Helen Mining Co. v. Elliot*, 859 F.3d 226, 233–34 (3d Cir. 2017) (stating statutes are ambiguous if "Congress has not addressed the 'precise question at issue,' whether by being 'silent or ambiguous with respect to the specific issue' or by leaving 'a gap for the agency to fill'" (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)). According to the Department of Labor regulation, known as the dual jobs regulation, an employee is a tipped employee even when engaging in related untipped duties "part of [the] time" or "occasionally." 29 C.F.R. § 531.56(e). However, if a tipped employee has dual jobs—one tipped and one untipped—an employer cannot take a tip credit for hours spent performing the duties of the untipped position. *See id.* A waitress, for example, may be a tipped employee for all of the hours she works "as long as she performs duties that are related to the tipped occupation and which are 'not by themselves directed toward producing tips' no more than 'occasionally' or 'part of [the] time.'" *Belt*, 401 F. Supp. 3d at 528 (alteration in original) (quoting 29 C.F.R. § 531.56(e)).[6]

---

[5] The parties do not dispute whether the FLSA's definition of a tipped employee is ambiguous. Although the Third Circuit has not addressed the issue, other federal courts have found the definition ambiguous. *See, e.g.*, *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 527–28 (E.D. Pa. 2019); *see also Marsh v. J. Alexander's LLC*, 905 F.3d 610, 621–22 (9th Cir. 2018); *Fast v. Applebee's Int'l*, 638 F.3d 872, 879 (8th Cir. 2011). The Court agrees the definition is ambiguous.

[6] The parties do not dispute that the dual jobs regulation is entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The Court will thus afford the dual jobs regulation *Chevron* deference and will use it as a reasonable interpretation of the phrase "engaged in an occupation" within the FLSA definition of a tipped employee. *See Belt*, 401 F. Supp. 3d at 528 ("Because the Court finds that the term 'engaged in an occupation' in Section 203(t) of the FLSA is ambiguous, and that the Dual Jobs regulation is a reasonable interpretation of this language, the Court will afford *Chevron* deference to the Dual Jobs regulation. In doing so, the Court follows the lead of the Eighth and Ninth Circuits, as well as multiple district courts." (internal citations omitted)).

Although the parties agree the dual jobs regulation applies to Reynolds's claim, they dispute how the regulation should be interpreted. The dispute arises from a recent change in the Department of Labor's own interpretation of the dual jobs regulation. The parties disagree as to whether the Court should defer to the agency's new interpretation under *Auer v. Robbins*, 519 U.S. 452 (1997), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), or whether the agency's prior interpretation is the most reasonable interpretation of the regulation.[7]

From 1985 until 2018, the Department of Labor consistently interpreted the dual jobs regulation as placing a 20% limit on the amount of time a tipped employee can spend on untipped related work before the employee will be deemed to be employed in "dual jobs." *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985), 1985 WL 1259240. In 1988, the Department of Labor added a provision to its Field Operations Handbook, stating that "where the facts indicate that tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance." U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(1)-(4) (rev. Dec. 15, 2016). And the Department continued to advocate for the 20% limitation in court filings as recently as 2016. *See Belt*, 401 F. Supp. 3d at 522–23 (citing cases as

---

[7] A court should use traditional tools of interpretation to determine the meaning of a regulation. *See Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 199 (3d Cir. 2015). If, however, the regulation is "genuinely ambiguous," a court can consider whether the agency has an interpretation of the regulation that is entitled to any deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Several courts interpreting the dual jobs regulation have concluded the regulation is genuinely ambiguous. *See, e.g., Belt*, 401 F. Supp. 3d at 530–31; *see also Marsh*, 905 F.3d at 624; *Fast*, 638 F.3d at 877. The Court is persuaded by the reasoning of these cases. Notably, the parties do not argue the dual jobs regulation is unambiguous. Instead, Defendants urge the Court to defer to the Department of Labor's new interpretation of the regulation while Reynolds urges the Court to adopt the Department's old interpretation as the best and most reasonable interpretation of the regulation.

recent as 2016 in which the Department of Labor adopted and advocated for the 20% limitation in amicus briefs).

However, the Department of Labor has recently abandoned this interpretation and appears to eliminate the 20% limitation in three agency documents. In a November 2018 Opinion Letter, the Department's Wage and Hour Division stated, "We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-27 (Nov. 8, 2018), 2018 WL 5921455, at *3. In February 2019, the Department revised its Field Operations Handbook to read consistently with the November 2018 Opinion Letter. The Handbook now provides, "29 CFR 531.56(e) permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips." U.S. Dep't of Labor, Field Operations Handbook §30d00(f)(2) (rev. Feb. 15, 2019). Finally, the Wage and Hour Division issued a Field Assistance Bulletin in February 2019, stating "an employer may take a tip credit for any duties that an employee performs in a tipped occupation that are related to that occupation and either performed contemporaneous with the tip-producing activities or for a reasonable time immediately before or after the tipped activities." U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019).

Based on this background, the parties dispute which interpretation applies to Reynolds's FLSA claim. Defendants move for summary judgment arguing the Court should defer to the Department of Labor's new interpretation. Under this interpretation, Defendants argue they are entitled to summary judgment because there is no limit on the amount of side work Reynolds could

perform while they were permitted to pay her using a tip credit. Reynolds, on the other hand, argues the new interpretation is not entitled to deference. She also argues the best and most reasonable interpretation of the regulation is the Department of Labor's prior interpretation which places a 20% limitation on the amount of side work tipped employees may perform while still being paid using a tip credit.

Because the Department of Labor's new interpretation of the dual jobs regulation is unreasonable, the Court declines to defer to that interpretation under *Auer v. Robbins*, 519 U.S. 452 (1997), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Judge Anita Brody recently considered whether the Department of Labor's new interpretation is entitled to *Auer* or *Skidmore* deference in *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512 (E.D. Pa. 2019). In a thorough and well-reasoned opinion, Judge Brody concluded the new interpretation was not entitled to deference under either standard because it is unreasonable, among other reasons. *See id.* at 531–35. The Court is persuaded by the analysis in *Belt* and adopts that analysis fully here.[8]

---

[8] Defendants attempt to distinguish *Belt* (and several other cases coming to the same conclusion) by asserting the "linchpin" in those cases was the "unfair surprise" to the plaintiffs, who initiated their lawsuits before the Department of Labor issued its new interpretation. Reynolds, in contrast, began her employment, and filed the Complaint in this case, after the new interpretation was released. Defendants' argument fails for two reasons.

First, the Court is unpersuaded the result in these cases turned on the element of unfair surprise. In *Belt*, the court gave a thorough and well-reasoned analysis as to why the new interpretation was unreasonable, inconsistent with prior agency interpretation, and unexplained. *See Belt*, 401 F. Supp. 3d at 532–35. Although the court noted the new interpretation was not issued until after the plaintiff's complaint was filed, this factor was hardly the linchpin of the court's decision. *See id.* (citing several reasons why the new interpretation was not entitled to deference); *see also Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552 (W.D. Va. 2019) (discussing several "significant signs" showing new interpretation is not entitled to deference).

Second, the absence of unfair surprise to Reynolds does not warrant deferring to the Department's new interpretation. The new interpretation is unreasonable because it directly contradicts the dual jobs regulation, which places a time limit on the amount of related untipped work an employee may perform by specifying that such work may be performed only occasionally, part of the time, or when taking a turn. *See Belt*, 401 F. Supp. 3d at 533 ("An interpretation proclaiming that there is *no* limit on the amount of related and untipped work directly contradicts

*See id.* (concluding the new interpretation is unreasonable because it removes any limitation on the amount of untipped related work, contradicting the dual jobs regulation's unequivocal temporal limitations and is internally inconsistent as to whether there is any limit on side work).

Because the Court declines to defer to the Department of Labor's new interpretation of the dual jobs regulation, the Court must determine the best or most reasonable interpretation of the regulation. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 252 (3d Cir. 2015). Addressing this issue in *Belt*, Judge Brody concluded the best or most reasonable interpretation of the dual jobs regulation is one which places a 20% limit on the untipped related side work an employee can perform while still being classified as a tipped employee. *See Belt*, 401 F. Supp. 3d at 536. The Court finds *Belt*'s reasoning persuasive on this issue and adopts that analysis here. The Court thus concludes employees who spend more than 20% of their time performing untipped related work are no longer tipped employees "during any of the time they spend performing untipped related work." *Id.* at 538. Such employees are instead "dual jobs" employees, "and the employer is no longer permitted to take the tip credit for any of the hours the employee[s] spend[] performing untipped related work."[9] *Id.*

_____

the temporal language in the Dual Jobs regulation, and is unreasonable."). In *Kisor*, the Supreme Court stated an agency's proffered interpretation *must* be reasonable before reaching whether the interpretation causes unfair surprise to the parties. *See* 139 S. Ct. at 2416. It is the reasonableness requirement that the new interpretation fails to meet. *See id.* ("And let there be no mistake: That is a requirement an agency can fail.").

[9] In arguing for an interpretation that does not include a 20% limitation, Defendants point to the Department's recent Notice of Proposed Rulemaking, which proposes an amendment to the dual jobs regulation. Under the proposed amendment, the regulation would provide that "[a]n employer may take a tip credit for any amount of time that an employee performs related, non-tipped duties *contemporaneously* with his or her tipped duties, or for *a reasonable time* immediately before or after performing the tipped duties." 84 Fed. Reg. 53,956, 53,977 (emphasis added) (proposed Oct. 8, 2019) (to be codified at 29 C.F.R. § 531.56).

Defendants argue this amendment sheds light on the Department's interpretation of the dual jobs regulation as it currently stands. This argument, however, misses the mark. The proposed

Because the Court concludes Reynolds was not engaged in a tipped occupation when she spent more than 20% of her time performing untipped related side work, resolution of Defendants' summary judgment motion turns on whether there is a genuine factual dispute as to whether Reynolds spent more than 20% of her time on untipped side work during any of the weeks she worked at Iron Hill. Because there is evidence from which a reasonable jury could find Reynolds met this standard, the Court will deny Defendants' motion for summary judgment.

As an FLSA plaintiff, Reynolds bears the burden to establish she spent more than 20% of her time performing untipped side work. *See Rosano*, 754 F.3d at 188 (stating an FLSA plaintiff "ordinarily bears 'the burden of proving that he performed work for which he was not properly compensated'" (internal citations omitted)). When, as here, an employer fails to maintain records of an employee's time,[10] however, the employee need only produce "sufficient evidence from which violations of the FLSA . . . may be reasonably inferred." *Id.* (citing *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 688 (1946)). "Once this inference is created, the burden shifts to the employer to rebut that inference." *Id.*

---

amendment does not change the language in the dual jobs regulation as it read at the time Reynolds worked at Iron Hill. Even if the amendment is finalized and codified, there is no reason to conclude it would apply retroactively to Reynolds. *See Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 557 n.2 (3d Cir. 2006) (stating regulations are generally not given retroactive effect). Further, if the dual jobs regulation in its current form could reasonably be interpreted as imposing no limit on the amount of untipped related work a tipped employee can perform, the Department would not need to amend the regulation to "clarify" its meaning. *See* 84 Fed. Reg. at 53,964 ("The proposed regulation would *clarify* that an employer may take a tip credit for any amount of time that an employee performs related, non-tipped duties contemporaneously with his or her tipped duties, or for a reasonable time immediately before or after performing the tipped duties." (emphasis added)).

[10] Defendants concede Iron Hill did not keep track of the amount of time Reynolds spent performing side work or the amount of time she had tables to wait on. Defs.' Mot. for Summ. J. 11 n.11.

Using the week of March 6 through March 12, 2019, as an example,[11] a jury could reasonably infer that Reynolds spent more than 20% of her time without an assigned table at the beginning or end of her shifts, times when Reynolds testified she was required to perform side work.[12]

First, Defendants produced a time sheet which shows the amount of time between Reynolds closing out her last customer check and clocking out of her shift for each closing shift she worked. *See* Defs.' Ex. C to Cooper Dec. A49–A60. For the week of March 6–12, this time sheet shows Reynolds was clocked in without a table for the following approximate percentages of her time each day: March 7 – 7%, March 8 – 6%, March 9 – 6% & 20%, March 10 – 32%, and March 11 – 35% & 27%. The average percentage of her time she spent without a table before clocking out was 19% for the entire week.

Second, Reynolds often clocked in before the restaurant opened, when there were no tables to assign. *See* Pl.'s Ex. E. For the week of March 6–12, Reynolds spent an average of 6.5% of her time clocked in before the restaurant opened and thus without an assigned table.[13]

---

[11] The parties agree Reynolds's workweek was Wednesday through Tuesday. *See* Pl.'s Resp. to Defs.' CSOF ¶ 22.

[12] Although the Court only addresses a single workweek here, this does not suggest Reynolds did not satisfy her burden for other workweeks. Rather, the Court references this one workweek as an example of at least one FLSA violation that can be reasonably inferred. The parties do not address the alleged FLSA violations on a workweek-by-workweek basis but instead address only the total amount of time Reynolds spent at work without an assigned table throughout her tenure at Iron Hill. Because Defendants do not argue they are entitled to summary judgment on certain workweeks, the Court need not address each workweek to deny Defendants' motion.

[13] On some days, Reynolds worked a "double," i.e., two shifts. On those days, she would clock out after the lunch shift and clock back in at a later time for the dinner shift. Because the restaurant stayed opened between shifts, and the parties have not produced evidence to show whether Reynolds was assigned a table immediately upon clocking back in for her second shift or whether she completed side work, the Court has not included the second clock-in times for purposes of this calculation.

Based on this evidence, a reasonable jury could find that, during the week of March 6–12, Reynolds spent approximately 25.5% of her shifts clocked in without an assigned table. Because Reynolds also testified she was required to perform side work during these periods at the beginning and end of her shifts when she did not have an assigned table, a jury could also reasonably infer she spent that time performing untipped side work. Therefore, for at least one of the weeks Reynolds worked, she has produced sufficient evidence to show she performed untipped side work for approximately 25.5% of her workweek. The Court will thus deny Defendants' motion for summary judgment on Reynolds's FLSA claim.

In arguing that Reynolds has not met her burden, Defendants point to the fact that the average percentage of time Reynolds spent between closing her last customer check and clocking out of her shifts throughout her employment with Iron Hill was only 13%. *See* Defs.' Ex. C, A59–A60. This average accounts for every shift Reynolds worked over her entire ten-week tenure. The FLSA, however, requires an employer to pay employees the minimum wage for all hours worked in a workweek. *See* 29 U.S.C. § 206(a). Thus, the amount of time Reynolds spent performing untipped side work must be calculated separately for each workweek. *See* 29 C.F.R. § 531.51 (stating tip credit is permitted only for wages paid to "employees whose occupations *in the workweeks*" for which wages are paid are those of tipped employees (emphasis added)).

Further, Defendants' 13% calculation fails to address Reynolds's evidence showing she regularly was scheduled, clocked in, and performed side work before the restaurant opened. Although Defendants' corporate designee stated servers were not required to perform side work before the restaurant opened, Reynolds testified she was expected to perform, and did perform, such pre-opening side work. In ruling on Defendants' motion for summary judgment, the Court must view the evidence in the light most favorable to Reynolds, not Defendants. Resolution of this

factual dispute, whether Reynolds actually performed side work before the restaurant opened, is for the fact finder. *See Paladino v. Newsome*, 885 F.3d 203, 209–10 (3d Cir. 2018) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." (citations omitted)).

Defendants also argue Reynolds's testimony estimating that she spent between two and three hours per shift, or approximately 23% of her time, performing side work is insufficient to allow a jury to reasonably infer she spent more than 20% of her time performing side work. *See* Defs.' Mot. for Summ. J. 12. The Court need not determine whether Reynolds's testimony alone is sufficient to defeat Defendants' motion because the record contains other evidence to support Reynolds's claim, including Defendants' timesheets and side work books. This other documentary evidence, together with Reynolds's testimony, provides a basis for a reasonable jury to conclude she spent more than 20% of her time on untipped side work. *See DiFlavis v. Choice Hotels Int'l, Inc.*, No. 18-3914, 2020 WL 610778, at *12 (E.D. Pa. Feb. 6, 2020) (determining plaintiff's testimony estimating amount of uncompensated work completed was sufficient to survive summary judgment). To refute Reynolds's testimony, Defendants have produced several declarations from managers and servers who estimate servers only spend 10% of their time on untipped side work. *See* Defs.' App. B99–B113. Neither party provides a basis for their estimates, and in any event, a jury must resolve this factual dispute.[14] *See DiFlavis*, 2020 WL 610778, at *12 (denying summary judgment where employee provided estimate of hours worked, employer refuted the estimate with records, and employee challenged the accuracy of employer's records).

---

[14] In fact, Defendants appear to concede there is a dispute of material fact as to how much time Reynolds spent performing untipped side work because her estimates are not supported by records. *See* Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. 10–11. There are, however, no records to support Defendants' declarants' estimates either.

Turning to Reynolds's PMWA claim, the Court concludes the 20% rule under the FLSA applies equally to claims under the PMWA. Pennsylvania courts give deference to a federal interpretation of a federal statute when interpreting a state statute that substantially parallels the federal law. *See Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd*, 859 A.2d 1253 (Pa. 2004). In particular, "Pennsylvania state courts have looked to federal law regarding the FLSA for guidance in applying the PMWA." *Razak v. Uber Techs. Inc.*, 951 F.3d 137, 142 (3d Cir. 2020). Because the PMWA and FLSA provisions regarding the wages to be paid to tipped employees are substantially parallel,[15] the Court will apply the FLSA standard to the PMWA claim. *See Livi v. Hyatt Hotels Corp.*, 751 F. App'x 208, 210–11 (3d Cir. 2018) (holding nearly identically worded provisions in the two statutes were parallel and interpreting PMWA provision based on case law interpreting the FLSA provision); *see also Stuber*, 822 A.2d at 873 (noting PMWA mirrors FLSA and stating two provisions with slightly different language were nearly identical). For the same reasons the Court will also deny Defendants' motion on Reynolds's FLSA claim, the Court will deny Defendants' motion on her PMWA claim.

II.     Reynolds's Motion for Partial Summary Judgment

The Court will deny Reynolds's motion for partial summary judgment on her PMWA claim because (1) the FLSA 20% rule applies equally to her PMWA claim, and (2) there is a dispute of material fact as to whether Reynolds spent more than 20% of her time performing untipped side work. The Court will also deny Reynolds's motion for partial summary judgment on the issue of

---

[15] The FLSA and PMWA provisions are nearly identical. Both statutes allow an employer to pay a tipped employee a cash wage below the minimum wage and "an additional amount on account of the tips received by [the] employee" which is equal to the difference between the cash wage and the minimum wage. *See* 29 U.S.C. § 203(m)(2)(A); 43 Pa. Stat. Ann. § 333.103(d). Further, the definition of a tipped employee is nearly identical. *Compare* 34 Pa. Code § 231.1(b), *with* 29 U.S.C. § 203(t).

whether Defendants acted willfully under the FLSA because there is a dispute of fact material to that issue as well.

As previously discussed, Reynolds's PMWA claim is governed by the same standards as her FLSA claim. Despite the similarities between the relevant provisions of the two statutes, Reynolds argues the PMWA requires Defendants to pay tipped employees the full minimum wage for every hour an employee did not earn a tip, regardless of whether the employee was waiting on a table or performing side work. *See* Pl.'s Mot for Summ. J. 9–11. She reaches this interpretation by pointing to a single difference in the two statutes: the fact that the PMWA specifies a formula to be used "[i]n determining the *hourly* wage an employer is required to pay a tipped employe[e]," 43 Pa. Stat. Ann. § 333.103(d) (emphasis added), while the FLSA specifies the same formula is to be used "[i]n determining the wage the employer is required to pay a tipped employee," 29 U.S.C. § 203(m)(2)(A). The Court is not persuaded the use of the term "*hourly* wage" in the PMWA where the FLSA uses the term "wage" supports Reynolds's proffered interpretation. *See Livi*, 751 F. App'x at 210–11 (interpreting PMWA provision in light of case law interpreting nearly identically worded FLSA provision). Further, Reynolds cites to no case law or other interpretations of the PMWA suggesting her interpretation is reasonable or would be applied by Pennsylvania courts. Therefore, the Court will apply the 20% interpretation under the FLSA to Reynolds's PMWA claim.

Because Reynolds's PMWA claim is governed by the same standard as her FLSA claim, the same dispute of material fact that precludes entry of summary judgment for Defendants also precludes entry of summary judgment for Reynolds. It will be for the jury to weigh the evidence to determine the amount of time Reynolds spent performing side work. As a result, the Court will deny Reynolds's motion for partial summary judgment on her PMWA claim.

17

Turning to the issue of Defendants' willfulness, there is a dispute of material fact precluding summary judgment. "[W]illfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]'" *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (citing *McLaughlin v. Richland Shoe Co.*,486 U.S. 128, 133 (1988)). To support her claim that Defendants' acted willfully, Reynolds points to evidence showing the corporate designees and managers of Iron Hill did not know of or have training on the 20% rule governing tipped employees. She also points to evidence showing Defendants paid a set up server the full minimum wage or above minimum wage rather than the tip credit wage. This server would come in early and perform untipped tasks similar to those performed by other servers. The set up server, however, clocked in under a different code and was paid minimum wage or above while clocked in under that different code. The server would then clock in under the server code upon receiving his or her first table. As Reynolds notes, the Defendants' use of this system for the set up server could lead a rational trier of fact to conclude they knew they could not pay the set up server the $2.83 tip credit wage for all of his or her untipped work. *Cf. Stone*, 935 F.3d at 151–52 (holding there was a genuine dispute of material fact as to an employer's willfulness where the employer characterized a per diem as wages for tax purposes but not in calculating employees' wages for overtime).

Although a rational jury could conclude Defendants acted willfully, viewing the evidence in Defendants' favor, a jury could also find Defendants acted innocently. Defendants' corporate designee stated she believed all tasks a server performed were tip-generating work and thus not separately paid. *See* Pl.'s Ex. D 117:5–117:6, 119:9–119:12. If this witness is believed, despite the payment to set up servers, then a rational jury could find Defendants did not act willfully. There is thus a genuine dispute of material fact as to whether Defendants acted willfully under the FLSA.

*See Whited v. New Café at Greystone Gardens*, No. 18-1811, 2020 WL 1271681, at \*5 (M.D. Pa. Mar. 17, 2020) (denying summary judgment on willfulness because some evidence showed employer believed violative conduct was permitted). The Court will therefore deny Reynolds's motion on this issue.

**CONCLUSION**

In sum, the Court concludes there is a 20% limit on the amount of time an employee may spend performing untipped side work while still being classified as a tipped employee under the FLSA. This 20% rule applies equally to the PMWA because the two statutes are substantially parallel. Because there is a dispute of material fact regarding whether Reynolds spent more than 20% of her time performing untipped side work, summary judgment is inappropriate on both claims. Also, because there is a dispute of material fact regarding Defendants' willfulness under the FLSA, summary judgment is precluded on that issue as well. Accordingly, the Court will deny Defendants' motion for summary judgment on both claims and Reynolds's motion for partial summary judgment on her PMWA claim and the issue of willfulness under the FLSA.

An appropriate order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.