IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA MARY REYNOLDS,<br>*on behalf of herself and all others similarly situated* | :<br>:   CIVIL ACTION<br>:<br>:   No. 19-2184 |
| v. | : |
| CHESAPEAKE & DELAWARE<br>BREWING HOLDINGS, LLC, et al. | :<br>:<br>: |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                   **May 19, 2020**

  Plaintiff Christina Mary Reynolds, a former server at Iron Hill Brewery and Restaurant, alleges her former employers failed to pay her (and other servers) the minimum wage because they improperly calculated her pay using a tip credit for time she spent performing untipped side work. Reynolds brings this putative collective and class action against her former employers, alleging violations of the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA). Reynolds now moves to certify two classes. First, Reynolds moves for conditional collective certification of a federal class under the FLSA. *See* 29 U.S.C. § 216(b). Second, Reynolds moves for class certification of a PMWA class under Federal Rule of Civil Procedure 23. Because Reynolds has made a modest factual showing of a nexus between her and other servers, the Court will grant Reynolds's motion and conditionally certify her FLSA class. However, because Reynolds has failed to show predominance of common questions for the PMWA class, the Court will deny her motion to certify the class.

**BACKGROUND**

  Defendants Chesapeake & Delaware Brewing Holdings, LLC and Iron Hill Brewery, LLC own 16 restaurants doing business as Iron Hill Brewery & Restaurant. There are ten restaurants located in Pennsylvania and the rest are located in New Jersey, Delaware, and South Carolina. At

each restaurant, Defendants employ servers to wait on customers, take orders, deliver food, and ensure customers enjoy their dining experience. Defendants consider servers to be front of house employees who receive tips directly from customers.

Servers clock in and out of their shifts using Defendants' Aloha time clock system. In the Aloha system, there is a job code for servers. Employees who clock in under the server job code are paid an hourly rate of $2.83 per hour. Defendants then use a tip credit to make up the difference between the $2.83 hourly wage and the $7.25 minimum wage. The tips servers receive directly from customers are thus applied to their wages to ensure they are paid at least minimum wage.

In addition to serving customers, servers at Iron Hill are required to perform "side work." Servers are expected to perform side work during their shifts and are trained on how to complete side work tasks, including, but not limited to, cleaning, filling condiments and dressings, rolling silverware, bussing tables, refilling napkins and other products, preparing dressings and sauces, and running dishes. These tasks are disbursed amongst the working servers on each shift. The type of side work servers perform varies based on a particular shift. Defendants use "side work books" to list the tasks servers must collectively complete at each location, designated by day, shift, and section of the restaurant.

Although all servers are required to perform side work, Defendants do not track servers' individual side work responsibilities. As a result, there is no record of what side work tasks were assigned to which servers, or how long a server spent performing the assigned tasks.

Reynolds worked as a server at the Iron Hill restaurant in North Wales, Pennsylvania from January 17, 2019, until March 30, 2019. Reynolds spent 10 days training as a server in which she was paid $7.25 per hour. On February 8, 2019, Reynolds began working as a server and she was paid $2.83 per hour plus tips.

Reynolds testified that throughout her tenure at Iron Hill, she was required to complete excessive amounts of side work. According to Reynolds, when working the opening shift, she was required to clock in before the restaurant opened and complete side work before she was assigned a table. During these shifts, Reynolds contends she completed side work from the time she clocked in until approximately 15 minutes after the restaurant opened while she waited to get her first table assignment. Without a table assignment, Reynolds had no ability to earn a tip during this time. There were also times in the middle of her shift where she did not have any table assignments. During these "lulls," Reynolds was required to complete side work tasks.

At a certain point in her closing shift, Reynolds would get "cut" and would no longer receive new tables. Defs.' App. A26–A27. Once Reynolds was cut, she would finish serving her assigned tables and perform side work. Reynolds contends she was often cut approximately two or three hours before she clocked out for her shift. When working a closing shift, Reynolds was required to complete side work after the restaurant was closed and she was no longer assigned a table. As a result, she had no ability to earn a tip during this time. Regardless of the amount of time Reynolds spent performing side work, she was paid $2.83 per hour for every hour she worked while clocked in as a server.

On May 20, 2019, Reynolds filed this class action Complaint against Defendants alleging violations of the FLSA because Defendants paid her and other servers less than minimum wage for hours in which she spent performing untipped side work. She asserts an identical claim under the PMWA.

On February 5, 2020, Reynolds moved to conditionally certify a collective "FLSA Class" pursuant to the FLSA. Reynolds's proposed collective FLSA Class is defined as:

> All servers who have worked for Chesapeake & Delaware Brewing Holdings, LLC and Iron Hill Brewery, LLC at any one or more of their Iron Hill Brewery & Restaurant locations at any point from May 20, 2016 through the present.

Reynolds also asks the Court to approve dissemination of notice to class members and direct Defendants to produce a list of contact information for servers employed within the class definition and paid using a tip credit.

Reynolds also moves for class certification of a "PMWA Class" pursuant to Rule 23(a) and (b). The proposed PMWA Class is defined as:

> All current and former servers who have worked for Iron Hill Brewery & Restaurants in the Commonwealth of Pennsylvania during the statutory period covered by this Amended Complaint and who do not opt-out of this action.

Defendants oppose both motions.

**DISCUSSION**

Although collective actions behave in many ways like class actions, a collective action under the FLSA is fundamentally different from a class action under Federal Rule of Civil Procedure 23. *See Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016). A complaint with FLSA collective action allegations thus does not give rise to Rule 23 class actions. *See id.* at 224. As a result, the Court will address each of Reynolds's motions in turn.

I.  Conditional Collective Certification

The Court will grant Reynolds's motion for conditional collective certification because there is a factual nexus between her and other servers employed at Iron Hill. The FLSA provides that an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is

brought." *Id.* FLSA collective actions are thus maintained by having individuals "opt-in" to the action. *See Halle*, 842 F.3d at 224. District courts are tasked with determining if those who wish to opt-in to a collective action are "similarly situated" as the FLSA requires. *See id.* There is a two-step certification process that has been adopted in the Third Circuit. *See id.*

The first step is conditional certification. This step requires a named plaintiff to make a "modest factual showing"—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members. *Id.* (citing *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). If a court grants conditional certification, the consequence is the "dissemination of court-approved notice to potential collective action members." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). Although not true certification at this stage, the Court exercises its discretionary authority to oversee and facilitate the notice process. *See id.* Conditional certification is a unique process and "is not tantamount to class certification under Rule 23." *Id.*

The second step, after conditional certification has been granted, requires individuals to file notices providing their written consent to participate in the collective action pursuant to § 216(b). *See id.* at 225 (stating opt-in requirement is mandated because "each individual must file an affirmative consent to join the collective action" unlike in Rule 23 classes). During this time, the parties conduct "certification-related discovery" which initially begins with other employee contact information. *See id.* After opt-in consents are filed, discovery will move toward whether a subset of the collective opt-ins are "similarly situated" to the named plaintiff. *See id.* at 226. Upon conclusion of this discovery, the parties will file motions seeking final certification or decertification of the collective action. *See id.*

Here, at the first step, Reynolds's evidence establishes the existence of a modest nexus of facts common to herself and the putative collective class and conditional certification is permissible. The evidence shows:

1. Employees at all Iron Hill locations were paid under a server "job code" when they worked as servers. *See* Pl.'s Ex. B at 49:17–50:1.

2. Defendants paid servers using a tip credit for all hours the server was clocked in under the server job code. *See id.* 30:12–30:19; 68:3–68:12.

3. Servers are expected to complete side work during their shifts. *See id.* 66:9–66:13.

4. Defendants used detailed lists of side work to be completed by servers as a team which were similar among all locations. *See generally* Pl.'s Exs. M–X.

5. Defendants used a tip credit for all hours servers are clocked in without formally tracking the amount of time servers spend performing side work. *See id.* Ex. B at 93:10–93:14; 119:16–120:2.

6. Defendants sometimes scheduled servers to clock in before the restaurant opened and clock out after servers closed out their final table and after the restaurant closed. *See* Defs.' Resp. to Pl.'s Statement of Facts ¶¶ 66, 67, 71.

7. Defendants tracked servers' time and determined whether to take a tip credit by using a uniform payroll system—known as Aloha. *See* Pl.'s Ex. B at 47:11–47:20.

8. Under the Aloha system, Defendants employed a uniform "payroll rule" to calculate whether they could use a tip credit for servers. *See id.* Ex. C at 48:22–50:20.

9. Defendants consider all work a server completes while clocked in as a server to be tip-generating work. *See id.* 117:22–120:12.

Based on this modest showing, the Court will grant Reynolds's motion for conditional certification of an FLSA Class of similarly situated servers. *See Fiumano v. Metro Diner Mgmt. LLC*, No. 17-465, 2018 WL 1726574, at *4 (E.D. Pa. Apr. 10, 2018) (conditionally certifying class of servers who were uniformly expected to complete side work and employer used tip credit for all hours worked as a server); *see also Stone v. Troy Constr., LLC*, No. 14-306, 2015 WL 7736827, at *3 (M.D. Pa. Dec. 1, 2015) (conditionally certifying FLSA collective action when plaintiff produced some evidence that other employees were subject to the same policies, payroll system, and expectations). The FLSA Class will be conditionally certified as:

> All servers who have worked for Chesapeake & Delaware Brewing Holdings, LLC and Iron Hill Brewery, LLC at any one or more of their Iron Hill Brewery & Restaurant locations at any point from May 20, 2016, through the present.[1]

Although the Court will conditionally certify the FLSA Class, the Court reserves approving notice and distribution of that notice until the parties confer and brief the issue. Once a court grants conditional certification, the court has the discretionary authority to oversee and facilitate the notice process. *See Halle*, 842 F.3d at 224. This authority includes monitoring preparation and distribution of court-facilitated notice sent to potentially eligible members of the collective action. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Although Reynolds contends notice is required upon conditional certification, she has not proffered a proposed notice form. Further, Defendants, in their response to this motion, do not address any of Reynolds's arguments regarding notice and how it should be disseminated. *See* Pl.'s Mot. for Conditional Certification 13–15 (arguing Defendants should provide a list of servers' contact information, post notice in

---

[1] Because there is a genuine dispute of material fact regarding whether Defendants acted willfully under the FLSA, *see* Mem. 18, May 12, 2020, ECF No. 44, the FLSA's three-year statute of limitations applies, *see Stone v. Troy Constr., LLC*, 935 F.3d 141, 154 (3d Cir. 2019) (stating FLSA civil actions must be commenced within two years except a cause of action that arises out of a willful violation may be commenced within three years).

7

their restaurants, and meet and confer with Reynolds regarding proposed notice forms). As a result, the Court will not approve notice, but will confer with the parties and order further briefing on this issue. *See Fiumano*, 2018 WL 1726574, at *5 (denying court-approved notice without prejudice subject to further briefing on notice and dissemination to potential members of collective action).

II.  Class Certification Pursuant to Rule 23

The Court will deny Reynolds's motion to certify the PMWA Class because she has failed to establish common questions predominate over individual questions. Courts determine whether class certification is appropriate by conducting a two-step analysis: (1) whether the putative class has satisfied the requirements of Rule 23(a), and (2) whether the requirements of Rule 23(b) have been met. *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 124–25 (3d Cir. 2018).

Rule 23(a) requires a plaintiff to establish (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Pursuant to Rule 23(b)(3), certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that class action is superior to the other available methods for fairly and efficiently adjudicating the controversy."

Proper analysis under Rule 23 requires "rigorous consideration" of the evidence and arguments of the parties and the Court must make specific findings that each Rule 23 requirement is met. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008). The Third Circuit has emphasized that "actual, not presumed conformance" with Rule 23 is essential to class certification. *See id.* at 326 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259

F.3d 154, 167 (3d Cir. 2001)). District courts must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits. *See Gates v. Rohm and Haas Co.*, 265 F.R.D. 208, 214 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *See id.* (internal quotations and citations omitted).

Defendants only challenge Reynolds's class certification of the PMWA Class on the basis of commonality, predominance, typicality, and adequacy. The Court will nonetheless briefly address how Reynolds has established each of the requirements in Rule 23(a). But Reynolds has failed to establish predominance as required in Rule 23(b)(3) which precludes class certification. Under the rigorous analysis the Court is incumbent to employ, Reynolds has not shown how classwide injury under the PMWA claim will be proven by common proof. As a result, the Court will deny Reynolds's motion.

To meet numerosity, the PMWA Class includes servers from ten restaurants in Pennsylvania. Defendants' corporate designees testified that each restaurant employs between 30 and 50 servers at a time. The class could easily encompass between 300 and 500 members, which establishes numerosity. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (internal quotation marks and citations omitted)).

The commonality requirement is met when the proposed class members share at least one common question of law or fact and "is informed by the defendant's conduct as to all class members." *Sullivan v. DB Invs.*, 667 F.3d 273, 297 (3d Cir. 2011). Reynolds has established common questions of fact because the class members work in the same capacity as servers, are subject to Defendants' uniform policy of using a tip credit for all hours worked, and complete side

work as part of their positions. Further, there is a common question of law because the parties dispute whether the PMWA standard for holding an employer liable for tip credit violations is governed by FLSA standards or a different standard. On that same note, the question of whether the class members are employed as tipped employees or as "dual jobs" employees as discussed in the parties' motions for summary judgment is a common question to all class members. *See* Mem. 5–11, May 12, 2020, ECF No. 44 (holding PMWA is governed by the FLSA standard and Defendants may not claim a tip credit for every hour a server worked if the server spent more than 20% of his or her time on untipped side work). These questions are sufficient to meet the commonality requirement in Rule 23(a). *See Carr v. Flowers Foods, Inc.*, No. 15-6391, 2019 WL 2027299, at *9 (E.D. Pa. May 7, 2019) (finding commonality because only a single common question is necessary and class members were employed in same positions and subject to same employment policies).

Typicality is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement screens out class actions in which the legal of factual position of the representatives is markedly different for that of the other members of the class even though there are common issues of fact or law. *See Marcus*, 687 F.3d at 598. Here, Reynolds has a typical claim as that of the class. She worked as a server and was paid using a tip credit for all hours she worked regardless of the amount of time she spent performing untipped side work. Her PMWA claim is thus premised on unpaid minimum wages for the amount of time she spent performing untipped side work, when she performed untipped side work more than 20% of the time. This claim is typical of the class members who bring the same PMWA claim for unpaid minimum wages and there is no evidence or reason to conclude her claim diverges from those of the class. *See Carr*, 2019 WL 2027299, at *9 (finding

typicality met where named plaintiff and class members advanced the same legal claims and "there [was] no indication that their claims [were] in any way antagonistic to other members of the class"); *see also Marcus*, 687 F.3d at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.").

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two components: (1) the qualifications of the counsel to represent the class and (2) whether there are any conflicts of interest between the named party and the class seek to represent. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009). Reynolds's counsel has submitted an affidavit and attachments detailing their extensive litigation experience, and specifically, their work in class actions and employment litigation. *See* Pl.'s Decl., Feb. 5, 2020, ECF No. 26; Pl.'s Ex. F (firm resume for Reynolds's counsel). Also, Reynolds is pursuing the same claim as the class members under the same theory of liability. There is thus no reason to doubt Reynolds's counsel's qualifications to represent the class or to find a conflict of interest between Reynolds and the class members. As a result, adequacy is met. *See Newton*, 259 F.3d at 186 (holding adequacy was met because "counsel would suitably represent the class and . . . there [were] no foreseeable conflicts between the named representatives and the class they seek to represent that would bar certification").

Turning to the Rule 23(b)(3) requirements, Reynolds has failed to satisfy the predominance requirement. Predominance requires the Court to find "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Courts must scrutinize whether questions are common or individual and the relation amongst those questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). An

individual question is one where members of a proposed class will need to present evidence that varies from member to member. *See id.* A common question is one where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to be generalized, class-wide proof." *Id.*

"To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by the putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018). This analysis requires the Court to "examine the essential elements of [the] claims on behalf of the . . . [c]lass, as well as the evidence they propose to use." *Id.*

In this case, the class's PMWA claim is premised upon Defendants' failure to pay servers the minimum wage for hours in which they performed untipped side work. Because the PMWA is substantially parallel to the FLSA, the elements necessary to succeed on an FLSA claim apply to the proposed class's PMWA claim.[2] *See Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd*, 859 A.2d 1253 (Pa. 2004); *Razak v. Uber Techs. Inc.*, 951 F.3d 137, 142 (3d Cir. 2020) ("Pennsylvania state courts have looked to federal law regarding the FLSA for guidance in applying the PMWA."). Employers are required to pay employees a minimum hourly wage, currently $7.25 per hour, unless an exception applies. *See* 43 Pa. Cons. Stat. § 333.104(a.1); 34 Pa. Code § 231.101(a); 29 U.S.C. § 206(a)(1). One such exception allows employers to pay their tipped employees less in wages ($2.83 per hour) and take a tip credit composed of the employees' tips to make up the difference between the lesser hourly wage and

---

[2] In ruling on the parties' motions for summary judgment, the Court held the PMWA claim is governed by the same standards as the FLSA. *See* Mem. 16, May 12, 2020, ECF No. 44.

the minimum wage. *See* 29 U.S.C. § 203(m)(2)(A); 43 Pa. Cons. Stat. § 333.103(d); 34 Pa. Code § 231.101(b). To take this tip credit, the tipped employees must be "engaged in an operation in which the employee customarily and regularly receives more than $30 a month in tips." 34 Pa. Code § 231.1(b); *see also* 29 U.S.C. § 203(t) (FLSA defining tipped employee as one who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips").

Consistent with the FLSA and this Court's prior Memorandum, tipped employees who spend more than 20% of their time performing untipped related work are not tipped employees "during any of the time they spend performing untipped related work." Mem. 11, May 12, 2020, ECF No. 44 (quoting *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 536 (E.D. Pa. 2019)). When tipped employees spend in excess of 20% of their time on untipped related work, they become "dual jobs" employees, "and the employer is no longer permitted to take the tip credit for any of the hours the employee[s] spend[] performing untipped related work." *Belt*, 401 F. Supp. 3d at 538.

To succeed on a minimum wage claim, an employee must show that she performed work for which she was not properly compensated. *See Rosano v. Twp. of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014). In this case, the servers were not properly compensated only if they spent more than 20% of their time on untipped side work and were nonetheless paid using the tip credit for all hours they worked. *See* Mem. 12 (stating the plaintiff "bears the burden to establish she spent more than 20% of her time performing untipped side work"). An essential element of the class's claim is thus whether they spent more than 20% of their time performing untipped side work in a workweek and were paid using the tip credit for all hours they worked.

The issue of whether the class members spent more than 20% of their time on untipped side work is not susceptible to proof with common evidence. To show liability to the class, Reynolds must show each class member spent more than 20% of their time in a workweek performing untipped side work. The record, however, has little to no evidence of how much time *servers* spend performing untipped side work. The record is focused on how much time Reynolds spent performing untipped side work. To establish Defendants' liability to Reynolds, she can rely upon her own testimony, her payroll records, and the side work she was typically assigned. The other class members, however, cannot rely on such evidence to show Defendants are liable to them. There is no evidence showing other class members clocked in well before their shift, clocked out long after they closed their last customer check, or how much side work they performed throughout their shifts. The essential element of whether the class members spent more than 20% of their time on untipped side work is thus an individual question. *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 186 (3d Cir. 2019) (holding common issues did not predominate because class members would "need to provide particularized evidence to show when employees were working").

Also, Reynolds provides no insight into how she intends to prove PMWA violations by common evidence. *See* Pl.'s Mot. to Certify Class 10–12. Reynolds simply argues the differences between the servers' side work, hours, and wages is an issue for damages which can be worked out once liability is established. Reynolds also argues there are predominantly common questions because all servers "operated under uniform policies" and there is a legal question of whether Defendants' conduct of claiming a tip credit for all hours servers worked violates the PMWA. *See id.* at 11. These arguments miss the mark.

Contrary to Reynolds's contention, the individual differences amongst the class members are relevant not only to damages, but to Defendants' liability. The class members are only entitled to damages if Defendants are liable to them. Defendants are only liable if the class members performed work for which they were improperly compensated. The class members were only improperly compensated if they spent more than 20% of their time in a workweek on untipped side work. It follows that the amount of time each server spent performing untipped side work is necessary to determine Defendants' liability. And because Reynolds has provided no common evidence to show servers spent more than 20% of their time on untipped side work, individual questions of liability overwhelm any common questions amongst the class.

Also, even if servers all operated under Defendants' uniform policies, those policies only create liability if they require servers to spend more than 20% of their time on untipped side work. Reynolds does not point to any common evidence that will prove servers did so. As a result, the uniform policies, although common to the class members, do not change the class members' burden to show they all spent more than 20% of their time on untipped side work. This logic applies equally to the legal question of whether Defendants' conduct in claiming a tip credit for all hours servers worked violates the PMWA.

Regardless of the common questions for the class, predominance cannot be established because Reynolds has not shown how an essential element of the PMWA claim will be established with common evidence.[3] *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015) (stating

---

[3] In *Tyson Foods, Inc. v. Bouaphakeo*, the Supreme Court held individual variations amongst class members should not defeat class certification. *See* 136 S. Ct. 1036, 1045–46 (2016). In that case, the issue was whether representative evidence could be used to prove the amount of time the class members spent performing compensable work (donning and doffing) even though individual employees spent different amounts of time performing the work. Despite the necessary inquiries into individual work times, the Court held the question of whether the time employees spent donning and doffing was compensable satisfied the predominance requirement of Rule 23(b)(3).

15

the predominance inquiry is focused on whether a plaintiff presents "reliable means of proving classwide injury"). Without establishing predominance, the Court cannot certify the PMWA Class.[4] The Court will therefore deny Reynolds's motion for class certification. *See Ferreras*, 946 F.3d at 186–87 (reversing class certification order because commonality and predominance could not be established due to individualized questions regarding class members' work and shifts).

**CONCLUSION**

Reynolds has made a modest factual showing that she is similarly situated to other Iron Hill servers to conditionally certify the FLSA Class as a collective action. Reynolds has not, however, established predominance as required pursuant to Rule 23(b)(3) to certify the PMWA Class. Accordingly, the Court will grant Reynolds's motion for conditional collective certification pursuant to the FLSA and deny her motion for class certification pursuant to Rule 23.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.

---

*See id*. The Third Circuit has also held the compensable time question was a common and predominant one because its resolution determined the scope of all class members' rights and left only questions of individual damages. *See Gonzalez*, 885 F.3d at 199. Nevertheless, *Tyson Foods* is distinguishable because Reynolds has not produced any such representative evidence that each class member would rely on to show Defendants' liability. *See Tyson Foods, Inc.*, 136 S. Ct. at 1046–47 (stating class members may prove classwide liability "by showing that each class member could have relied on [the representative evidence] to establish liability if he or she had brought an individual action").

[4] Because Reynolds must establish all requirements under Rule 23(a) and (b)(3), the Court need not address superiority to deny class certification. *See* Fed. R. Civ. P. 23(b)(3).