IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA MARY REYNOLDS, | : | CIVIL ACTION |
| *on behalf of herself and all others* | : | |
| *similarly situated* | : | No. 19-2184 |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE & DELAWARE | : | |
| BREWING HOLDINGS, LLC, et al. | : | |

### MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                          October 30, 2020

Plaintiff Christina Mary Reynolds, a former server at Iron Hill Brewery and Restaurant, alleges her former employers failed to pay her (and other servers) the minimum wage because they improperly calculated her pay using a tip credit for time she spent performing untipped side work. Reynolds brings this putative collective and class action against her former employers, alleging violations of the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA). On May 12, 2020, the Court issued a Memorandum and Order denying Defendants' motion for summary judgment. A week later, on May 19, 2020, the Court issued a Memorandum and Order granting Reynolds's motion for conditional collective action certification on the FLSA claim but denying her motion for class certification on the PMWA claim. Reynolds seeks reconsideration of both rulings. Specifically, she argues the Court improperly placed the burden of proof on her to establish violations of the FLSA and PMWA and erroneously relied on this burden to conclude that she could not show predominance, as required for class certification. Reynolds asks the Court to place the burden on Defendants, find she established predominance, and grant class certification on the PMWA claim. Because Reynolds has failed to show the Court committed a clear error of law, the Court will deny her motion. The Court will nonetheless clarify its rulings, although the result is still a denial of class certification on the PMWA claim.

**BACKGROUND**

Defendants Chesapeake & Delaware Brewing Holdings, LLC and Iron Hill Brewery, LLC own 16 restaurants doing business as Iron Hill Brewery & Restaurant. At each restaurant, Defendants employ servers, like Reynolds, to wait on customers, take orders, deliver food, and ensure customers enjoy their dining experience. Defendants pay all servers using a "tip credit"—which includes a fixed hourly wage of $2.83 plus tips. The tips servers earn make up the difference between the paid hourly wage and the minimum wage of $7.25.

Reynolds, however, claims Defendants were not permitted to pay servers using a tip credit for time spent performing untipped side work. Servers are expected to perform side work during their shifts and are trained on how to complete side work tasks, including, but not limited to, cleaning, filling condiments and dressings, rolling silverware, bussing tables, refilling napkins and other products, preparing dressings and sauces, and running dishes. Reynolds alleges she (and other servers) spent a significant amount of time in each workweek, more than 20%, performing untipped side work. As a result, she alleges Defendants must pay her (and other servers) the full minimum wage for the time spent performing that side work.

Although all servers are required to perform side work, Defendants do not track servers' individual side work responsibilities. As a result, there is no record of what side work tasks were assigned to which servers, or how long servers spent performing the assigned tasks. Even though side work is not on its own directed toward generating customer tips, Defendants consider all server duties, including side work, to be tipped work.

On May 20, 2019, Reynolds filed a putative collective and class action Complaint, alleging Defendants violated the FLSA and its state-law analogue, the PMWA, by paying her less than minimum wage for hours she spent performing untipped side work. Defendants moved for

summary judgment on both claims, arguing there is no limit on the amount of time a server can spend on side work while still being paid using a tip credit. The same day, Reynolds moved for conditional collective action certification on the FLSA claim and class certification on the PMWA claim.

On May 12, 2020, the Court denied Defendants' summary judgment motion. The Court first held there is a 20% limit on the amount of time a server can spend on untipped related side work while still being classified as a tipped employee. *See* Mem. 11, May 12, 2020, ECF No. 44. Servers who spend more than 20% of their time performing untipped related side work are not considered to be tipped employees during any of the time they spend performing that work. *See id.* The Court then turned to the issue of whether Reynolds had produced sufficient evidence to survive Defendants' motion. On this issue, the Court stated an FLSA plaintiff bears the burden of proving that she performed work for which she was not properly compensated. *See id.* at 12. Where the employer fails to maintain adequate records of an employee's time, the employee can meet this burden by producing sufficient evidence from which violations of the FLSA can be "reasonably inferred," and the burden then shifts to the employer to rebut this inference. *See id.* Using this standard, the Court concluded Reynolds met her burden and denied Defendants' motion for summary judgment on both claims.[1]

On May 19, 2020, the Court granted Reynolds's motion for conditional collective action certification on the FLSA claim but denied her motion for class certification on the PMWA claim, concluding Reynolds failed to establish predominance as required under Federal Rule of Civil Procedure 23(b). Applying the same burden set forth in the summary judgment Memorandum, the

---

[1] The Court also concluded the same standard applies to both the FLSA and the PMWA claims. *See* Mem. 16.

Court noted that to prevail on their claims, Plaintiffs would have to show they "performed work for which [they] w[ere] not properly compensated"—i.e., that "they spent more than 20% of their time on untipped side work." Mem. 13–14, May 19, 2020, ECF No. 46. The Court then concluded Reynolds failed to establish how she and the class would establish liability with common evidence. *See id.* Absent common evidence as to how much time servers spent performing untipped side work, and because the evidence that Reynolds spent more than 20% of her time performing untipped side work was particular to her, the Court concluded that establishing liability would require an individualized inquiry based upon servers' individual testimony, time records, and assigned side work. *See id.* And because this individualized inquiry was the basis for liability and damages, it predominated over any common questions to the class. *See id.* The Court thus denied class certification under Rule 23.

On May 26, 2020, Reynolds moved for reconsideration of the Court's May 12, 2020, Memorandum insofar as it placed the burden of proof on her, and the Court's May 19, 2020, Memorandum and Order insofar as they denied class certification on the PMWA claim. Reynolds argues that by placing the burden on her, the Court committed a clear error of law because this ruling contradicts binding Third Circuit precedent. She also contends that had the Court placed the burden on Defendants, the Court would have found common questions predominate and granted class certification on the PMWA claim. Defendants oppose the motion.

**DISCUSSION**

The Court will deny Reynolds's motion because she has not shown that that the Court erred in applying the burden-shifting framework established in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 688 (1946), *superseded by statute on other grounds*, Portal–to–Portal Act of 1947, Pub. L. No. 49–52, § 5, 61 Stat. 84, 87 (May 14, 1947) (codified at 29 U.S.C. § 216(b)), or in holding

that Reynolds failed to establish predominance of common questions to certify the PMWA class. "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A judgment may be altered or amended only if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court made the ruling in question; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). Reynolds relies on the third ground—the need to correct a clear error of law. The Court, however, did not commit such an error.

In addressing Defendants' summary judgment motion, the Court applied the burden-shifting framework for FLSA claims set forth in *Mt. Clemens*.[2] In that case, the Supreme Court stated, "An employee who brings suit under § 16(b) of the [FLSA] for unpaid minimum wages . . . has the burden of proving that he performed work for which he was not properly compensated." 328 U.S. at 686–87. The Supreme Court noted this is not meant to be an impossible burden for the employee and acknowledged that employers have the duty to keep proper records to establish the work employees perform and the wages paid. *See id.* at 687. As a result, the employee's burden may usually be met by securing the employer's records. *See id.*

---

[2] The FLSA standards apply equally to PMWA claims. *See* Mem. 16, May 12, 2020, ECF No. 44 (citing *Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd*, 859 A.2d 1253 (Pa. 2004), and *Razak v. Uber Techs. Inc.*, 951 F.3d 137, 142 (3d Cir. 2020)). The Court will thus refer only to the FLSA standards in addressing this motion. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (referring only to the FLSA when requirements for proving state law claim and FLSA claim were the same).

5

However, when an employer has not kept records as to the precise extent of improperly compensated or uncompensated work, the employee may meet his burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* The burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *See id.* at 687–88. If the employer fails to satisfy its burden, then the employee's evidence may be used to establish the amount of compensable work and relevant damages, even if it is only an approximate. *See id.* at 688.

In the May 12, 2020, Memorandum, the Court applied this framework. The Court noted that Reynolds has the burden to prove she performed work for which she was not properly compensated. *See* Mem. 12. The Court also noted Defendants conceded they did not keep records of the time Reynolds spent performing side work. *See id.* n.10. The Court thus concluded that, pursuant to *Mt. Clemens*, Reynolds need only "produce sufficient evidence from which violations of the FLSA . . . may be reasonably inferred." *Id.* Using this framework, the Court determined a jury could reasonably infer Reynolds spent more than 20% of her time on untipped side work during at least one of the weeks she worked at Iron Hill. By producing evidence to support this inference, Reynolds met her relaxed burden to show she performed work for which she was improperly compensated—i.e., paid $2.83 for time spent engaged in an untipped occupation.

Although Reynolds contends the Court applied an improper burden by citing to *Rosano v. Township of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014), that case also applied the *Mt. Clemens* burden-shifting framework. To the extent Reynolds contends this framework is inapplicable, Reynolds herself used this framework to argue she met her initial burden in her memorandum in

6

support of her motion for reconsideration.³ *See* Pl.'s Mem. of Law in Supp. of Mot. for Reconsideration 2 n.4 ("As with any other tip credit case, Plaintiff here bears the initial burden of establishing that she worked hours for which she was not properly compensated . . . ."); *id.* at 12 (arguing Plaintiff and the class are "entitled to deference under *Mt. Clemens*").

While the Third Circuit has not addressed the issue, the Court is persuaded the *Mt. Clemens* burden-shifting framework applies here. In an identical tip credit case, the Eighth Circuit Court of Appeals held the *Mt. Clemens* framework applied to an employee's tip credit claim at the summary judgment stage. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881–82 (8th Cir. 2011). The Eighth Circuit compared tip credit claims to overtime and mealtime claims, to which the *Mt. Clemens* framework applies, placing the initial burden on the employee to establish he worked hours for which he was not properly paid. *See id.* For instance, for mealtime claims, employees are required to establish that their actions during their scheduled mealtimes were for the benefit of the employer and thus not part of a bona fide meal period. *See id.* (citing *Hertz v. Woodbury Cnty.*,

---

³ And although Reynolds contends she met her burden under *Mt. Clemens* merely by relying on the fact that Defendants paid all servers $2.83 for all hours they were clocked in as servers even though they performed some untipped side work, the Court is unpersuaded this is sufficient to create the reasonable inference that she performed work for which she was improperly compensated because she was only improperly compensated if she spent more than 20% of her time in a workweek on untipped side work. *See, e.g.*, *Howe v. Johnny's Italian Steakhouse, L.L.C.*, No. 16-0086, 2018 WL 6521496, at *7–8 (S.D. Iowa Sept. 11, 2018) (stating employer's policy requiring servers to perform untipped side work while paying them less than minimum wage was insufficient, on its own, to show the policy violated the FLSA); *Langlands v. JK & T Wings, Inc.*, No. 15-13551, 2016 WL 4073548, at *3 (E.D. Mich. Aug. 1, 2016) (noting employer's requirement that servers perform side work and policy of using tip credit "does not indicate a violation of the law" because the issue is whether the servers spent more than 20% of their time on side work). Rather, the Court found Reynolds met her burden by relying on her testimony and other records showing she spent more than 20% of a workweek clocked in without an assigned table (time Reynolds testified she performed side work).

566 F.3d 775, 784 (8th Cir. 2009)). Similarly, for overtime claims, employees are required "to present evidence that they worked more than their scheduled hours without compensation." *Id.*[4]

Considering the use of the *Mt. Clemens* framework for these analogous FLSA claims, the Eighth Circuit concluded employees alleging tip credit claims "must establish that they spent a substantial amount of time performing [untipped work] such that they were not performing a tipped occupation for at least portions of their shift." *Id.* at 882. And if the employer fails to keep records of the time employees spent on untipped work, "employees can use the relaxed *Mt. Clemens* standard by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (internal citation and quotation marks omitted). In the absence of Third Circuit authority to the contrary, the Court is persuaded to follow the lead of the Eighth Circuit and apply the *Mt. Clemens* framework to tip credit cases, as numerous other district courts have done. *See, e.g.*, *Mooney v. Domino's Pizza, Inc.*, No. 14-13723, 2016 WL 4576996, at *5–7 (D. Mass. Sept. 1, 2016) (applying *Mt. Clemens* framework to tip credit claim where delivery drivers were allegedly required to spend a significant amount of time on untipped work inside the restaurant); *Ide v. Neighborhood Rest. Partners, LLC*, No. 13-509, 2015 WL 11899143, at *5–6 (N.D. Ga. Mar. 26, 2015) (concluding employee "failed to show" she performed untipped work for a substantial amount of time).

Reynolds argues this approach runs counter to *Reich v. Chez Robert, Inc.*, 28 F.3d 401 (3d Cir. 1994), in which she contends the Third Circuit held that the employer bears the burden of proving the applicability of the tip credit exception to the minimum wage, including that the

---

[4] Like the Eighth Circuit, the Third Circuit also places the initial burden on employees who claim unpaid overtime, in the absence of employer records, to produce sufficient evidence from which FLSA violations can be reasonably inferred. *See Rosano*, 754 F.3d at 188–189; *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991).

employee qualifies as a "tipped employee" under 29 U.S.C. § 203(t). *See* Pl.'s Mem. of Law in Supp. of Mot. for Reconsideration 2; Pl.'s Reply 3. *Chez Robert*, however, does not sweep so broadly.

As an initial matter, the discussion of the tip credit in *Chez Robert* was limited to the requirements listed in 29 U.S.C. § 203(m). Pursuant to that section, an employer can use a tip credit only when (1) the employer informs the employee that a tip credit is being used and the amount of that credit; (2) the employee retains all tips collected; and (3) the amount of tips the employee collects equals or exceeds the tip credit amount. Addressing the notice aspect of this provision, the Third Circuit stated an employer may use a tip credit "but only if the employer informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision." 28 F.3d at 403. "If the employer cannot show *that it has informed employees that tips are being credited against their wages*, then no tip credit can be taken and the employer is liable for the full minimum wage . . . ." *Id.* (emphasis added) (internal citations omitted). Contrary to Reynolds's contention, the Third Circuit did not mention § 203(t) at all, let alone address which party bears the burden to establish that an employee is a "tipped employee"—i.e., one engaged in a tipped occupation, spending no more than 20% of his or her time in a workweek on untipped related work—under that provision.

Reynolds also cites *Chez Robert* for the proposition that FLSA exceptions are treated the same as exemptions, in that the burden is on the employer to prove their applicability. But even assuming exceptions and exemptions are the same in this regard, this does not relieve employees of the burden to show they performed work for which they were improperly compensated. FLSA exemptions are construed narrowly against employers who "bear the burden of proving plainly and unmistakably" that they qualify for an exemption. *Mazzarella v. Fast Rig Support, LLC*, 823

9

F.3d 786, 790 (3d Cir. 2016) (internal citations and quotation marks omitted). However, regardless of whether the employer establishes an exemption, the employee still bears the burden to show the employer violated the FLSA by failing to pay minimum wage or overtime compensation and the amount of damages. *See Rosano*, 754 F.3d at 188–89 (addressing whether employer qualified for exemption and whether employee met burden to show improperly compensated work). The Court is thus unpersuaded *Chez Robert* directly dictates the burden of proof here.

To the extent Reynolds contends the *Mt. Clemens* framework is only applicable at the damages stage, the Court again emphasizes that FLSA liability is intertwined with damages. *See* Mem. 15, May 19, 2020, ECF No. 46 ("The class members are only entitled to damages if Defendants are liable to them. Defendants are only liable if the class members performed work for which they were improperly compensated."). In *Rosano*, the Third Circuit first addressed whether the employer had established its entitlement to an overtime exemption which increased the number of hours employees could work before triggering the FLSA overtime requirements. *See* 754 F.3d at 185–87. After determining the employer did qualify for the exemption, the Third Circuit stated the employees failed to meet their burden to show that the hours they worked exceeded the necessary threshold for overtime compensation to reasonably infer a violation of the FLSA or the amount of an award. *See id.* at 189–90.

Similarly, in this case, Reynolds must show the hours she performed untipped side work exceeded the 20% threshold such that she was no longer engaged in a tipped occupation when performing side work and was thus improperly compensated for such work. It is undisputed Defendants paid Reynolds using a tip credit pursuant to § 203(m), which is permissible under the FLSA. Defendants therefore only violated the FLSA if Reynolds was not a tipped employee, i.e., one "engaged in an occupation in which [she] customarily and regularly receive[d] more than $30

a month in tips."[5] 29 U.S.C. § 203(t). Reynolds does not dispute that she was engaged in a tipped occupation when she had assigned tables and waited on those tables.[6] Rather, she contends she was not engaged in such an occupation for any amount of time spent performing untipped side work if that amount exceeded 20% of her time in a workweek. The thrust of Reynolds's claim is thus that she was improperly compensated for her time spent on untipped side work because she was not engaged in a tipped occupation during this time but was nevertheless paid using a tip credit.

Based on the foregoing, and consistent with the *Mt. Clemens* framework, Reynolds must show she was improperly compensated. She was improperly compensated only if she spent more than 20% of her time in a workweek on untipped side work. Therefore, she bears the burden of showing she spent more than 20% of her time on untipped side work. Because Defendants concede they did not keep records of the time Reynolds spent performing untipped side work, she bears a relaxed burden and need only produce sufficient evidence to show she spent more than 20% of her time on untipped side work by just and reasonable inference. Having applied this burden in the first instance, the Court did not commit a clear error of law and Reynolds's motion for reconsideration will be denied on this issue.

Because the *Mt. Clemens* framework applies to Reynolds's claims, Reynolds also has not shown that the Court made a clear error of law in holding she has not established predominance

---

[5] There appears to be no dispute that Defendants complied with the requirements under § 203(m) in this case. Specifically, Reynolds does not contest that she was informed of Defendants' use of the tip credit and does not argue the tip credit claimed exceeded the amount she made in tips or that she was not permitted to retain all of her tips or was required to share her tips with nontipped employees.

[6] There appears to be no dispute that Reynolds's earned more than the threshold $30 a month in tips while working at Iron Hill.

11

which precludes class certification on the PMWA claim. With the burden of proof unchanged, the Court again adopts its reasoning in its May 19, 2020, Memorandum denying class certification here. However, because the Court did not explicitly state the *Mt. Clemens* burden-shifting framework applied to the class claim, the Court will clarify the applicable standard here.

As stated in the Court's May 19, 2020, Memorandum, to establish liability on a class-wide basis, Reynolds must show the members of the class spent more than 20% of their time in a workweek performing untipped side work. Again, because Defendants concede they do not keep records of the time servers spend performing untipped side work, the class is entitled to the relaxed *Mt. Clemens* standard. Because the Court failed to state this in its prior Memorandum, the Court does so now. The class members need only produce sufficient evidence from which violations of the FLSA may be reasonably inferred. *See Mt. Clemens*, 328 U.S. at 688.

Applying the relaxed standard, Reynolds still cannot establish predominance because she has not shown how she will demonstrate violations of the FLSA under this standard using common proof. The Court found FLSA violations could be reasonably inferred as to Reynolds based on her testimony that she performed untipped side work when she did not have a table assignment, records of her time sheets, and customer checks showing when she did not have a table assignment. As for the other class members, there is only evidence that they were, at times, required to perform *some* side work.[7] However, there is no evidence in the record regarding how much time they spent performing untipped side work, when they performed that side work, or what side work they

---

[7] It is undisputed that servers were expected to perform side work throughout their shifts. *See, e.g.*, Ex. B, Cooper Dep. 66:9–13; Ex. D, Serva Dep. 98:23–99:10. The record shows, however, that side work was assigned by managers and completed by servers based on a number of variables including servers' shifts, opening or set up servers' workloads, day of the week, section of the restaurant, restaurant location, training agenda used, and team work. *See, e.g.*, Cooper Dep. 95:13–100:16; Serva Dep. 68:4–75:7; Exs. M–X.

performed. And accordingly, there is no evidence from which it can be reasonably inferred that other servers spent more than 20% of their time performing untipped side work. In fact, to support her contention that all servers spend excessive amounts of time on side work, Reynolds points only to her own time sheets and experiences performing side work. *See, e.g.*, Pl.'s Statement of Material Facts ¶¶ 68–76. This evidence is insufficient to establish liability to the entire class.

In light of the considerable variation in how side work was assigned to class members, Reynolds's individualized evidence cannot be used to establish predominance of common questions. The record shows Defendants employed nearly 30–50 servers at each of its locations. Side work was assigned to servers based on shift, day, and section of the restaurant. Defendants employed set up servers who completed the opening side work and made daily lists of side work to be completed later, which varied from day to day. Some servers would get "cut" toward the end of their shift and would no longer receive tables, though when this would happen would vary from server to server. In light of these variations, Reynolds has not provided any method of proving classwide liability with common evidence. *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185–87 (3d Cir. 2019) (holding predominance was not met because "there was substantial variability" in what employees were doing). And under *Mt. Clemens*, she has not provided any method of showing the class members spent more than 20% of their time in a workweek performing untipped side work by just and reasonable inference.[8] *See Howe*, 2018 WL 6521496, at *8 (denying

---

[8] The Court notes that, even if Defendants bear the burden of producing evidence to establish the servers were tipped employees for each hour they were paid using a tip credit, this, too, would be an individualized inquiry. Reynolds, who bears the burden to establish class certification is appropriate, has failed to suggest how Defendants will prove each class member was a tipped employee by common evidence. *See Newton v. Merrill Lynch, Fenner & Smith, Inc.*, 259 F.3d 154, 191–92 (3d Cir. 2001) (finding the individualized nature of defendants' defenses would preclude class certification under superiority requirement); *Ferreras*, 946 F.3d at 186 ("There is no easy measure, like the time clock, to which *the parties* can turn to determine the amount of time an employee may have been working." (emphasis added)).

certification and stating "[e]ven if the Court accepts Plaintiff's statements with respect to her own work, her evidence as to other servers is inadequate"); *id.* at \*13 (noting that side work performed and the time taken to perform it varied by location, shift, and server and finding "individualized inquiries would be unavoidable").

Insofar as Reynolds contends the legality of Defendants' policies is the predominant question, the Court disagrees. The policies are only illegal if they require servers to spend more than 20% of their time each workweek on untipped side work. Reynolds need not show the policies actually violated the FLSA at this stage, but she is required to show how she will demonstrate, by common evidence, that Defendants' policies had the effect of requiring servers to spend more than 20% of their time each workweek on untipped side work. *See id.* at \*8 ("Plaintiff's problem is that she has failed to adequately demonstrate the existence of a policy or plan [requiring servers to spend substantial amounts of time performing untipped labor], not that she has failed to show actual violations of the FLSA."). She has not done so because "the fact that Defendant[s] had a policy of requiring some side work does not indicate a violation of the law." *Langlands*, 2016 WL 4073548, at \*3.

Because Reynolds failed to establish predominance, the Court properly denied class certification on the PMWA claim. As a result, the Court did not commit a clear error of law. Reynolds's motion for reconsideration will be denied on this issue as well.

**CONCLUSION**

In sum, Reynolds has failed to show the Court committed a clear error of law by placing the initial burden on her to establish she performed work for which she was improperly compensated or by denying class certification under that burden. Accordingly, Reynolds's motion for reconsideration will be denied.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.